Linton Joaquin*
Karen C. Tumlin*
Shiu-Ming Cheer*
Melissa S. Keaney*
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 2850
Los Angeles, California 90010
Telephone: (213) 639-3900
Facsimile: (213) 639-3911
*joaquin@nilc.org*
*tumlin@nilc.org*
*cheer@nilc.org*
*keaney@nilc.org*

Omar C. Jadwat*
Andre I. Segura*
Elora Mukherjee*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 549-2660
Facsimile: (212) 549-2654
*ojadwat@aclu.org*
*asegura@aclu.org*
*emukherjee@aclu.org*

Attorneys for Plaintiffs

*    Admitted *Pro hac vice*
+    Counsel for all plaintiffs except SEIU and
     Workers' United

Cecilia D. Wang*
Jennifer Chang Newell*
Katherine Desormeau*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION IMMIGRANTS'
RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950
*cwang@aclu.org*
*jnewell@aclu.org*
*kdesormeau@aclu.org*

Esperanza Granados (USB No. 11894)
AMERICAN CIVIL LIBERTIES
UNION OF UTAH FOUNDATION, INC.
355 North 300 West
Salt Lake City, Utah 84103
Telephone: (801) 521-9862
Facsimile: (801) 532-2850
*egranados@acluutah.org*

Bradley S. Phillips*+
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
*brad.phillips@mto.com*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| Utah Coalition of La Raza, *et al.,*<br>                              Plaintiffs,<br>     v.<br><br>Governor Gary R. Herbert, *et al.,*<br>                              Defendants. | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AGAINST § 5 OF HB 497**<br><br>Case No. 2:11-cv-00401-BCW;<br>Case No. 2:11-cv-1072-CW<br>Judge:  Honorable Clark Waddoups |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

    **I.**    **Plaintiffs Have Established a Likelihood of Success on the Merits** ............................... 2

        **A.**    **Section 5 Is Preempted** ................................................................................. 2

        **B.**    **Section 5 Violates the Fourth Amendment** ................................................ 7

    **II.**    **Plaintiffs Will Be Irreparably Harmed If § 5 Is Not Enjoined** ................................. 10

        **A.**    **Plaintiffs' Showing of Harm Is Not Speculative** ................................... 10

        **B.**    **Defendants' Claim of Delay Must Be Rejected** ..................................... 12

    **III.**    **The Balance of Equities and the Public Interest Weigh in Favor of the Plaintiffs** .... 15

CONCLUSION ........................................................................................................................ 17

CERTIFICATE OF SERVICE ............................................................................................... 18

EXHIBIT A (see attachment)

## TABLE OF AUTHORITIES

**Federal Cases**

*Arizona v. United States*, 132 S. Ct. 2492 (2012) .................................................................... passim

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) .......................................... 12

*Buquer v. City of Indianapolis*, 797 F.Supp.2d 905 (S.D. Ind. 2011) ........................................ 9

*Chamber of Commerce v. Edmondson*, 594 F.3d 742 (10th Cir. 2010) ..................................... 16

*Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ................. 12

*Friendly House v. Whiting*, No. CV 10-1061-PHX-SRB (D. Ariz. May 29, 2012) .................... 11

*Ga. Latino Alliance for Human Rights v. Deal* (*GLAHR*), 793 F. Supp. 2d 1317 (N.D. Ga. 2011),
  *rev'd in part on other grounds*, No. 11-13044 (11th Cir. Aug. 20, 2012) ........................ 12, 16

*Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250 (10th Cir. 2003) .................................... 11

*GTE Corp. v. Williams*, 731 F.2d 676 (10th Cir. 1984) .............................................................. 14

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .............................................................. 12

*Hispanic Interest Coal. of Ala. v. Bentley* (*HICA*), No. 5:11-CV-2484-SLB,
  2011 WL 5516953 (N.D. Ala. Sept. 28, 2011) ........................................................................ 12

*Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehabilitative Servs.*,
  31 F.3d 1536 (10th Cir. 1994) ................................................................................................. 13

*New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (10th Cir. 1995). ...................... 12

*Nilson v. JPMorgan Chase Bank*, 690 F. Supp. 2d 1231 (D. Utah 2009) ................................... 13

*Roda Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009) ...................................................... 13

*United States ex rel. Attorney Gen. v. Del. & Hudson Co.*, 213 U.S. 366 (1909) ........................ 3

*United States v. Di Re*, 332 U.S. 581 (1948) .............................................................................. 10

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) ................................ 6


**State Cases**

*Snow v. Office of Legislative Research & Gen. Counsel*, 167 P.3d 1051 (Utah 2007) ................. 4

*State v. Lindquist*, 674 P.2d 1234 (Utah 1983) ............................................................................ 3

*State v. Mirquet*, 914 P.2d 1144 (Utah 1996) .............................................................................. 8

*State v. Snyder*, 860 P.2d 351 (Utah Ct. App. 1993) ................................................................... 8

**Federal Regulations**

8 C.F.R. § 287.7(a) .................................................................................................. 5

8 C.F.R. § 287.7(d) .................................................................................................. 5

**State Statutes and Rules**

Utah Code Ann. § 76-9-1003(4) ............................................................................... 4

Utah Code Ann. § 76-9-1005 ............................................................................. 5, 8, 9

Utah Code Ann. § 77-16b-104(2) .............................................................................. 8

Utah Code Ann. § 77-20b-101 .................................................................................. 8

Utah Code Ann. § 77-20b-103(1) .............................................................................. 8

Utah Code Ann. § 77-20b-103(2)(b)(ii) ..................................................................... 8

Utah R. App. P. 41 .................................................................................................... 4

## INTRODUCTION

Defendants' opposition is notable for what it does *not* say.  Defendants do not contest that § 5 would violate the Supremacy Clause if it authorized Utah officers to unilaterally detain and transfer unlawfully present immigrants to a federal detention facility.  Defendants also do not dispute that § 5 would violate the Fourth Amendment if it permitted state officers to detain noncitizens pending such a transfer when they would otherwise be entitled to release.  Neither do Defendants contest that noncitizens subjected to a transfer under § 5 could be detained for four or more hours during transfer to a federal facility within Utah.

Defendants instead attempt to construe away the constitutional problem, asking this Court to re-write the statute and to add text and requirements not enacted by the state legislature, in order to avoid the obvious constitutional difficulties identified by Plaintiffs.  As Plaintiffs explain below, the plain text of § 5 is not reasonably susceptible to Defendants' reading, and makes clear that the statute must be enjoined because it exceeds the state's constitutional authority.

Defendants also contend that Plaintiffs' purported delay in filing this motion undercuts a finding of irreparable harm.  But Plaintiffs acted immediately to preserve the status quo by moving for and obtaining a temporary injunction covering all of HB 497, including § 5, at the time that the law was scheduled to go into effect in May 2011.  In addition, Plaintiffs acted reasonably to bring this motion specifically to obtain a preliminary injunction against § 5 in light of the Supreme Court's guidance in *Arizona v. United States*, 132 S. Ct. 2492 (2012), which instructed that states may not detain noncitizens solely for immigration purposes without federal supervision, and without specific authorization from Congress.  *See id.* at 2509.  Defendants have known from the time Plaintiffs filed the Complaint that they would have to defend the constitutionality of § 5, and can show no prejudice based on the timing of the instant motion.

1

Contrary to Defendants' arguments, in light of the strong merits of Plaintiffs' claims, the irreparable harm Plaintiffs are likely to suffer, and the other equitable factors, § 5 should be preliminarily enjoined pending a final decision on its constitutionality.[1]

## I.  Plaintiffs Have Established a Likelihood of Success on the Merits

### A.  Section 5 Is Preempted

As Plaintiffs have shown, § 5 conflicts with federal law because it grants state officers unilateral authority to detain unlawfully present immigrants when federal immigration law grants no such power and because, in so doing, it impermissibly usurps federal discretion to make detention and removal decisions.  Dkt. # 202 (Pls. Mot. for Prelim. Inj. at 4-11).  As Plaintiffs have also shown, § 5 is field preempted because it improperly intrudes on the comprehensive federal scheme governing detention of noncitizens for immigration purposes.  Dkt. # 202 (Pls. Mot. for Prelim. Inj. at 11).  Defendants do not contest that if § 5 authorizes state officers – without federal approval – to detain unlawfully present immigrants pending transfer to a federal detention facility, then § 5 is both conflict and field preempted by federal immigration law. Indeed, Defendants concede that the state "cannot make its own immigration enforcement decision."  Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 5).

Defendants' sole argument is that "'to save the statute from constitutional infirmity,'" *id.* at 9 (citation omitted), § 5 must be read as requiring federal approval before a state officer may transfer a noncitizen.  In support of this reading, Defendants do not rely on any language in § 5 itself.  Instead, they point to an independent provision of HB 497, § 3(4), which requires state or local law enforcement officers who have custody of an unlawfully present alien to make a

---

[1] Defendants note that the United States has not sought to enjoin § 5.  *See* Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 1 n.1).  However, the United States' litigation decisions have no bearing on the merits of Plaintiffs' motion.

"request" to federal immigration authorities to issue an immigration detainer.  Defendants baldly

assert, with no textual support, that § 5 authorizes a transfer "only after a detainer is issued," and

suggest that a detainer, if issued, somehow constitutes "federal approval for, and acceptance of,

the transfer."  Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 6-7).[2]

Defendants' argument fails for the simple reason that the statute cannot be read that way:

In short, § 5 is not "reasonably susceptible" to Defendants' proffered construction.  *United States*

*ex rel. Attorney Gen. v. Del. & Hudson Co.*, 213 U.S. 366, 407 (1909); *see also State v.*

*Lindquist*, 674 P.2d 1234, 1237 & n.12 (Utah 1983) (citing *United States ex rel. Attorney Gen. v.*

*Del. & Hudson Co.*, 213 U.S. 366 (1909)).  Defendants are asking this Court to re-write the

statute to contain requirements that the state legislature plainly did not intend and that are not

present in the text.

Section 5 cannot reasonably be read to require that a detainer be issued before

transportation.  The statute sets forth explicit requirements before in-state transfer to federal

officials, and a detainer for the purposes of effectuating transfers is plainly not one of them.

Those requirements are only that the noncitizen be verified as unlawfully present, and that the

noncitizen be in custody at the time the transfer is initiated.  Utah Code Ann. § 76-9-1005 ("A

state or local law enforcement officer may securely transport an [unlawfully present] alien who is

in the agency's custody . . . to a federal detention facility in this state . . . .").  Even though the

legislature was obviously aware of detainers because it made reference to them in § 3(4), § 5

---

[2] Although Defendants emphasize that § 5 also requires verification of unlawful presence, Defendants do not explain how such verification would cure the constitutional problems raised by § 5's detention and transfer authority.  *See* Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 3, 6, 10); *see also* Dkt. # 195 (Pls. Supp. Auth. at 5-10) (explaining that H.B. 497's verification procedure is unconstitutional in numerous respects).  As explained herein, *Arizona* makes clear that state officers cannot detain based solely on immigration violations – even if those violations are verified.

says nothing about any detainer, and does not require that the relevant law enforcement officer await the results of any detainer request made under § 3(4), let alone require that a detainer must first be issued before any transfer is made.  Nor does § 5 even mention § 3(4).  Similarly, neither § 3(4), nor any other provision of HB 497, states or even suggests that the transfer authority under § 5 is conditioned on issuance of a detainer.[3]

Moreover, § 5's express requirement of federal "concurrence" for out-of-state transfers underscores that no such concurrence – in the form of a detainer or otherwise – is required for in-state transfers.  Dkt. # 202 (Pls. Mot. for Prelim. Inj. at 6).  Defendants even admit that § 5 "gives a blanket authorization to make in-state transfers; but out-of-state transfers are not allowed unless and until the federal government signs off on the transfer."  Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 7).  Defendants thus effectively concede that § 5 contains no requirement that "the federal government sign[] off on the transfer" for in-state transfers.  *Id.* Thus, this Court must reject Defendants' proffered reading of the statute, because it is contrary to the legislation's express text.[4]

---

[3] Although § 3(4) describes a detainer as a "request[] [for] transfer . . . into federal custody," nowhere does that provision (or any other in HB 497) require that a transfer pursuant to § 5 be *conditioned* on issuance of a detainer.  *See* Utah Code Ann. § 76-9-1003(4). And, for the reasons explained below, a detainer does not in fact constitute a "request[] [for] transfer . . . into federal custody."

[4] Plaintiffs submit, for the reasons explained, that there is only one plausible interpretation of § 5.  If there were any ambiguity, however, Plaintiffs submit that the appropriate course would be to certify the question to the Utah Supreme Court while maintaining the injunction to preserve the status quo.  *See* Utah R. App. P. 41 (allowing certification from federal courts to the state Supreme Court when a novel question of state law is controlling of the federal proceedings); *see also* Dkt. # 195 (Pls. Supp. Auth. at 8) (citing authorities on benefits of certification).  Notably, in contrast to a Utah Supreme Court interpretation, Defendants' litigation position is not controlling and Defendants have cited no authority indicating that their construction of § 5 is binding on all Utah officers.  *Cf. Snow v. Office of Legislative Research & Gen. Counsel*, 167 P.3d 1051, 1054 n.2 (Utah 2007) (explaining that, even when the Attorney General issues a formal opinion, "[a]s with any legal analysis, until a court of last resort speaks on an issue, reasonable and informed minds may well differ").

Although – in light of § 5's plain language – the Court need not reach the question whether a detainer would constitute federal approval for a state-initiated transfer, Plaintiffs note that Defendants' argument that fails even on its own terms.  As Plaintiffs have explained, a detainer is merely a notice from ICE to another law enforcement agency, indicating that ICE may have an interest in a person held in the agency's custody, and requesting that the agency maintain custody of the person for up to forty-eight hours.  *See* Dkt. # 37 (Pls. Mot. for Prelim. Inj. at 15-16); 8 C.F.R. § 287.7(d); *see also* 8 C.F.R. § 287.7(a) (stating that a detainer is simply "a request that such [state or local] agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody").  A detainer does *not* reflect a judgment on the part of ICE that a person is deportable.  Even according to the sample detainer Defendants submitted with their brief, the issuance of a detainer may indicate only that federal authorities have "[i]nitiated an investigation to determine whether this person is subject to removal from the United States," and not that ICE has determined to take custody.  Dkt. # 209 (Exh. A to Def. Opp. to Mot. for Prelim. Inj.); *see also* Dkt. # 37-19 (Fernandez Decl., Exh. F) (U.S. Immigration & Customs Enforcement, *Interim Policy Number 10074.1: Detainers* (Aug. 2, 2010)) (providing that "at any time after a detainer is issued," the immigration agency may "determine[] it will not assume custody of the alien").  Thus the presence of a detainer wholly fails to cure the impermissible unilateral nature of § 5's transfer scheme. To say the least, a detainer is not, as Defendants contend, an invitation for state authorities to dump noncitizens on the federal government's doorstep.

---

In the event that the Court decides to certify a question, Plaintiffs would respectfully propose the following:

Does § 5 of H.B. 497, Utah Code Ann. § 76-9-1005, require that a federal immigration detainer must first be issued before a noncitizen may be transferred to a federal detention facility?

Finally, Defendants assert that Plaintiffs cannot prevail on their preemption claim against § 5 because they are required to show, in this facial challenge, that "'no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in *all* of its applications.'"  Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 10) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).  Defendants contend that Plaintiffs' preemption claim is based on "conjecture about the way HB 497 will be enforced" and "assumptions that HB 497 will be construed in an unlawful manner."  Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 10).  Contrary to Defendants' contention, however, Plaintiffs' preemption claim rests not on "conjecture" but on the plain language of § 5, which on its face authorizes Utah law enforcement officers to unilaterally detain unlawfully present immigrants pending transfer, on the state's unilateral action, to federal detention facilities.

Further, the Supreme Court's recent decision in *Arizona v. United States*, 132 S. Ct. 2492 (2012), controls here.  *Arizona* considered a provision of Arizona's SB 1070 that is functionally identical to § 5.  Section 6 of SB 1070 granted state and local officers authority to make warrantless arrests of, and therefore to detain, certain persons believed to be deportable aliens. *Id.* at 2505.  Section 5 of HB 497 purports to grant similar detention power untethered from federal control.  The Supreme Court held that Arizona's analogous provision is preempted on its face (along with two other sections of SB 1070), without applying, citing, or even alluding to the "no set of circumstances" formulation cited by Defendants here.  The Supreme Court held the Arizona provision's to be preempted based on its *potential* to interfere with the federal system, including the fact that the "state authority [under § 6] *could* be exercised without any input from the Federal Government."  *Arizona*, 132 S. Ct at 2506 (emphasis added); *see also id.* (observing that § 6 "could" lead to harassment of individuals the federal government would not seek to

remove); *id.* at 2503 (under § 3 of the law, the State might "bring criminal charges against individuals for violating a federal law even in circumstances where federal officials" decline to do so); *cf. id.* at 2534 (Alito, J., dissenting) (arguing that the majority's decision to hold § 6 facially invalid ignored the "no set of circumstances" standard). Similarly here, § 5 of HB 497 empowers Utah officers to act without federal input, to trench on federal objectives, and to usurp the federal government's discretion over detention decisions, contrary to Congress's intent as expressed in the Immigration and Nationality Act. *See* Dkt. # 202 (Pls. Mot. for Prelim. Inj. at 3-11). Section 5 is preempted on its face.

**B. Section 5 Violates the Fourth Amendment**

As Plaintiffs have shown, § 5 also contravenes the Fourth Amendment because it authorizes detention of unlawfully present noncitizens pending transfer to a federal detention facility, past the point in time when any state-law basis for custody has expired (*e.g.*, when state charges have been dismissed). Dkt. # 202 (Pls. Mot. for Prelim. Inj. at 11-15). Defendants appear to concede, as they must, that § 5 would violate the Fourth Amendment if it permitted detention after the lawful basis for custody has expired. Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 11). Thus, Defendants' only disagreement is over whether § 5 in fact authorizes detention past that point. Defendants first assert that the text of the statute does not permit prolonging detention once the individual would otherwise be entitled to release. *See id.*[5] But § 5

---

[5] Defendants make inconsistent arguments on this point, since they also argue that § 5 authorizes detention and transfer when a detainer has been issued. As indicated by the detainer form submitted by Defendants, the detainer is a request that state or local authorities "[m]aintain custody of the subject . . . *beyond the time when the subject would otherwise have been released from your custody*." Dkt. # 209 (Exh. A to Def. Opp. to Mot. for Prelim. Inj.) (emphasis added).

is not so limited; it plainly grants transfer authority for any verified unlawfully present noncitizen "who is in the agency's custody."  Utah Code Ann. § 76-9-1005.[6]

On its face, the statute requires custody at the time the transfer is initiated, but nowhere limits transfer authority to persons whom the state would otherwise continue to hold in custody if not for the transfer.  The state legislature could have drafted § 5 to include a limitation such as limiting transport only to an alien "*who would otherwise remain in the agency's custody*," but it chose not to do so.  *Compare id.* § 76-9-1005 (authorizing transportation of "an alien who is in the agency's custody") *with id.* § 77-20b-103(1) (providing that certain bail procedures must be followed "[i]f . . . the defendant is and *will be in the custody* of authorities" (emphasis added)); *see also*, *e.g.*, *id.* at § 77-20b-103(2)(b)(ii) (providing that certain requirements apply "if the defendant remains in custody"); *id.* § 77-16b-104(2) ("as long as the prisoner remains in custody of the correctional facility"); *id.* § 77-20b-101 (providing for certain limitations to apply "while [the Defendant is] in custody").  Section 5 contains no requirement that the noncitizen would otherwise remain in custody for the transfer authority to apply.[7]

---

[6] Notably, under Utah law, "custody" is not limited to detention at a jail.  The Utah courts have understood the term "custody" to include circumstances short of arrest in which an individual has been stopped or questioned by police.  *See*, *e.g.*, *State v. Mirquet*, 914 P.2d 1144, 1147-48 (Utah 1996) (holding that individual detained during roadside stop was "in custody" for *Miranda* purposes based on several factors); *State v. Snyder*, 860 P.2d 351, 355-57 (Utah Ct. App. 1993) (holding that individual who was not yet arrested was nonetheless "in custody" for *Miranda* purposes based on several factors).  Thus, noncitizens detained at the side of the road may be considered "in custody" without being charged of any crime, and could be transferred and detained pursuant to § 5 even though state officers have no independent state law basis for holding them.  Section 5 violates the Fourth Amendment for this reason as well.

[7] To the extent the Court believes the statute is ambiguous as to whether it requires an independent state law basis for custody for the duration of a transfer, the Court should certify the question to the Utah Supreme Court, and maintain the injunction in the interim to preserve the status quo.  *See supra* n.4.  In the event the Court chooses to certify a question, Plaintiffs respectfully propose the following:

Defendants next suggest that, even if § 5 authorizes detention after the time the state law basis for custody has expired, any detention would nonetheless be lawfully authorized based on the issuance of a federal detainer. *See* Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 12). But as Plaintiffs have explained, *see supra* at 3-4, a noncitizen may be detained and transferred pursuant to § 5 regardless of whether any detainer has been issued. Defendants' attempt to rely on the issuance of a federal immigration detainer to cure the Fourth Amendment violation must therefore be rejected.

Moreover, though the Court need not reach the issue here, Defendants' argument rests on an assertion of unconstitutional detention authority. Even if § 5 detention authority were limited to circumstances in which a detainer has issued, Defendants incorrectly equate an immigration detainer with an arrest warrant, without acknowledging the constitutional differences between them. Defendants have not demonstrated that immigration detainers are based on probable cause to believe that a person has violated any immigration law, much less that he committed a crime. *See Buquer v. City of Indianapolis*, 797 F.Supp.2d 905, 910 (S.D. Ind. 2011) (noting specifically that a "detainer is not a criminal warrant"); Dkt. # 195 (Pls. Supp. Auth. at 3 n.2) (explaining that immigration detainers "are not warrants that issue after consideration by a magistrate or judge"); Dkt. # 209 (Exh. A to Def. Opp. to Mot. for Prelim. Inj.) (detainer form indicating that the federal government has "[i]*nitiated an investigation* to determine *whether* this person is subject to removal from the United States" (emphasis added)). Thus, holding an individual *solely* based upon an immigration detainer – *i.e.*, an expression of interest by the federal government – violates the Fourth Amendment. *See* Dkt. # 202 (Pl. Mot. for Prelim. Inj. at 12-14); *see also*

---

Does § 5 of H.B. 497, Utah Code Ann. § 76-9-1005, authorize state officers to detain an unlawfully present noncitizen in order to transfer him to a federal detention facility, regardless of whether he would otherwise be entitled to release under state law?

*Arizona*, 132 S. Ct. at 2509 ("Detaining individuals solely to verify their immigration status would raise constitutional concerns."); *id.* at 2505 ("If the police stop someone based on nothing more than possible removability, the usual predicate for arrest is absent.").[8]  From a Fourth Amendment perspective, the issuance of a detainer cannot cure the state's constitutional violations under § 5.

In any event, the Court need not decide the question of whether a federal immigration detainer supplies probable cause for state officers to detain a noncitizen in order to resolve this motion.  As discussed, under the plain text of the statute, the detention and transfer authority granted in § 5 is in no way limited to situations in which a detainer has issued.

## II.  Plaintiffs Will Be Irreparably Harmed If § 5 Is Not Enjoined

### A.      Plaintiffs' Showing of Harm Is Not Speculative

Plaintiffs have submitted voluminous evidence showing that they (and in the case of organizational Plaintiffs, their members) will be irreparably harmed if § 5 is not enjoined. Plaintiffs will be subjected to enforcement of an unconstitutional, preempted state law and are at imminent risk of unlawful stops, arrests, and detention.  Further, § 5 implementation will also divert resources away from the organizational Plaintiffs' core activities, frustrate their goals, and hinder their ability to retain and recruit members.  *See* Dkt. # 202 (Pls. Mot. for Prelim. Inj. at 15-17); *see also* Dkt. # 116 (Pls. Reply in Support of Mot. for Prelim. Inj. of HB 497 at 18-20).

---

[8] Defendants cite *United States v. Di Re*, 332 U.S. 581, 589 (1948), for the proposition that the "authority of state officers to make arrests for federal crimes is, absent federal statutory instruction, a matter of state law."  Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 12). However, any such principle is wholly inapplicable here, where the detention in question is based on mere unlawful presence, rather than suspicion of any crime.  *See, e.g.*, *Arizona*, 132 S.Ct. at 2505 ("As a general rule, it is not a crime for a removable alien to remain in the United States.").  *See also id.*, at 2507 ("Congress has put in place a system in which state officers may not make warrantless arrests of aliens based on possible removability except in specific, limited circumstances.").

Defendants assert that HB 497's harms are either "speculative or nonexistent (because [they are] based on an improper reading of the statute) or both." Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 13-14). Defendants are wrong on both counts. First, these harms are not speculative. Once HB 497 goes into effect, Plaintiffs will be at imminent and significant risk of unlawful seizure, arrest, and detention by law enforcement officers. Plaintiffs need not show with certainty that they will be detained under HB 497 to satisfy the standard for irreparable harm.

> [A]n injury is not speculative simply because it is not certain to occur. An irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will experience harm that cannot be compensated after the fact . . . .

*Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (quotation and citation omitted).

The likelihood that Plaintiffs will be targeted for law enforcement scrutiny is especially acute because they belong to racial or national origin minority groups, speak foreign languages or foreign-accented English, and/or lack HB 497's qualifying identity documents – characteristics they cannot easily change. For example, Plaintiffs Jane Doe and David Morales are noncitizens whose unlawful presence is known to federal authorities, but whom the federal government has exercised its discretion not to remove. Dkt. # 202 (Pls. Mot. for Prelim. Inj. at 9). Plaintiff Jane Doe lacks the type of identity documents required under HB 497. Dkt. #171 (Sealed Declaration of Jane Doe, at ¶ 11). Such circumstances place the Plaintiffs at heightened risk of being stopped and improperly arrested under other provisions of HB 497, and therefore at risk of being transferred and detained pursuant to § 5. *See, e.g.*, *Friendly House v. Whiting*, No. CV 10-1061-PHX-SRB (D. Ariz. May 29, 2012) (order denying motion to dismiss individual plaintiffs, holding that plaintiffs' allegations that their appearance and limited English language

ability would put them at risk of unlawful stops, detention, questioning, and arrest under

Arizona's SB 1070 was not speculative) (attached as Exhibit A); *Hispanic Interest Coal. of Ala.*

*v. Bentley* (*HICA*), No. 5:11-CV-2484-SLB, 2011 WL 5516953, at *37 (N.D. Ala. Sept. 28,

2011) (finding "real and imminent" threat of injury where plaintiff alleged that she would be

subject to interrogation and detention based on her Latina appearance and lack of state-approved

identity documents); *cf. Ga. Latino Alliance for Human Rights v. Deal* (*GLAHR*), 793 F. Supp.

2d 1317, 1326 (N.D. Ga. 2011*), rev'd in part on other grounds*, No. 11-13044 (11th Cir. Aug.

20, 2012) (finding irreparable harm where similar state law would convert many routine

encounters with law enforcement into lengthy and intrusive immigration status investigations);

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *New Mexicans for Bill*

*Richardson v. Gonzales*, 64 F.3d 1495, 1502 (10th Cir. 1995).

Defendants also argue, erroneously and without citation to any legal authority, that

diversion of resources does not constitute legally cognizable harm to organizational Plaintiffs.

Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 13-14). Courts have repeatedly found that

frustration of an organization's mission or diversion of its resources constitutes irreparable harm.

*See GLAHR*, 793 F. Supp. 2d at 1326, 1340; *Fla. State Conference of the NAACP v. Browning*,

522 F.3d 1153, 1164-66 (11th Cir. 2008); *cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363,

379 (1982).

### B. Defendants' Claim of Delay Must Be Rejected

Defendants' primary response to Plaintiffs' showing of irreparable harm is to suggest that

Plaintiffs' showing is undercut by a purported delay in bringing this motion. *See* Dkt. # 209

(Def. Opp. to Mot. for Prelim. Inj. at 14). However, while it is true that delay may sometimes

weigh against a finding of irreparable harm, the Tenth Circuit has emphasized that "delay is

simply one consideration in the overall irreparable harm analysis." *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) ("We [] reject [Defendant's] contention that a finding of irreparable harm is foreclosed because of [Plaintiff's] delay in filing for injunctive relief"). Here, any delay does not weigh against a finding of irreparable harm because Plaintiffs preserved the status quo by moving for and obtaining a temporary injunction enjoining the entirety of HB 497, including § 5, and filed the instant motion shortly after the Supreme Court decision in *Arizona* made clear that § 5 violates both the Supremacy Clause and the Fourth Amendment.

Courts in the Tenth Circuit have rejected claims based on delay in seeking injunctive relief in cases where the delay is not unreasonable, does not alter the outcome of the proceedings, and/or does not prejudice the party opposing the injunction. *See, e.g.*, *Roda Drilling Co.*, 552 F.3d at 1211-12 (affirming finding of irreparable harm in case involving two-year delay where "delay in this case was not unreasonable" and Defendant "has not argued that the delay in any way disadvantaged its interests"); *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehabilitative Servs.*, 31 F.3d 1536, 1544 (10th Cir. 1994) (affirming finding of irreparable harm where "the delay does not alter any conclusion, based upon the evidence presented, that [the challenged policies] do or do not inflict harm on plaintiffs" and where "defendants have not claimed that they are somehow disadvantaged because of the delay"); *Nilson v. JPMorgan Chase Bank*, 690 F. Supp. 2d 1231, 1259-60 (D. Utah 2009) (Kimball, J.) (holding that delay did not undercut finding of irreparable harm where "delay was not unreasonable," and delay "has neither disadvantaged [the opposing party] nor altered the outcome of this proceeding").

In this case, Defendants cannot show that any delay by Plaintiffs was unreasonable in any respect. As discussed, Plaintiffs acted promptly to preserve the status quo by obtaining a temporary injunction that covers § 5. Thus, the instant case is easily distinguishable from the

cases cited by Defendants, in which the plaintiffs had allowed the challenged action or policy to continue in effect for some time prior to requesting any injunction. *See* Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 14-15) (citing, inter alia, *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)).

Further, the timing of the instant motion was reasonably based on the Supreme Court's decision in *Arizona*. As Plaintiffs have demonstrated in their briefing on the merits of this motion, several of the Supreme Court's conclusions made clear that a provision that authorizes unilateral state detention based on immigration status alone, such as § 5, is invalid both under the Supremacy Clause and under the Fourth Amendment. *See, e.g.*, Dkt. # 202 (Pls. Mot. for Prelim. Inj. at 1, 3-8, 10, 11-12, 14) (discussing *Arizona*); *see also* Dkt. # 183 (Order of Feb. 21, 2012) ("[T]he court does not believe it would be helpful to the parties for the court to rule on the present motions before it receives the additional guidance from the Supreme Court."). Plaintiffs filed this motion not long after *Arizona* was issued (and after Plaintiffs completed the supplemental briefing requested by this Court).[9]

In addition, any delay does not alter the conclusion regarding the facts of irreparable harm. This is not a case in which Plaintiffs' fears of harm flowing from the challenged policy are undermined by action or inaction by the Plaintiffs allowing the policy to go into effect. Neither is this a case in which the claims of irreparable harm are undercut by any showing that the claimed harm never materialized after the challenged policy has been allowed to go into effect.

---

[9] Plaintiffs indicated their intent to file a preliminary injunction motion challenging § 5 in the July 2012 supplemental briefing ordered by this Court in light of the Supreme Court's decision in *Arizona*. *See* Dkt. # 195 (Pls. Supp. Auth. at 7 n.3). Plaintiffs moved with reasonable speed by filing this motion less than one month after completing the supplemental briefing and less than two months after the *Arizona* decision.

Relatedly, although Defendants state conclusorily that the alleged delay has been "prejudicial," Defendants have not pointed to any actual prejudice.  *See* Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 15).  Section 5 has never been permitted to go into effect, so Defendants have not had to change their practices one way or the other.  Further, as Defendants admit, Plaintiffs included their claims against § 5 in their Complaint, so Defendants have known from the outset that they would have to defend its legality.  *See* Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 14).

In sum, because the alleged delay was not unreasonable and did not disadvantage Defendants or otherwise alter the outcome, Defendants' argument should be rejected.

### III.   The Balance of Equities and the Public Interest Weigh in Favor of the Plaintiffs

Defendants argue that the equities weigh against granting a preliminary injunction here because the State deserves "wide[] latitude in the dispatch of its own internal affairs."  Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 15) (quotation and citation omitted).  But regulating immigration is not a matter of the state's "own internal affairs" as a matter of settled law of preemption.  *See, e.g.*, *Arizona*, 132 S. Ct. at 2498-99.

Defendants allege that enjoining § 5 harms the state's interest because it "would impair both the State's effort to assist the federal government and the United States' ability to enforce immigration laws," claiming that § 5 "*helps* the federal government do its job."  Dkt. # 209 (Def. Opp. to Mot. for Prelim. Inj. at 16).  But as shown in Plaintiffs' briefing, § 5 gives the state unilateral authority – even where the federal government does not consent – to transport an unlawfully present noncitizen to a federal detention facility, and to detain the noncitizen during the course of the transfer.  *See supra* at 2-4 .  While the federal system reserves to the federal government the discretion whether to detain a particular noncitizen, the state usurps that

discretion for itself.  Section 5 is thus not an attempt to help the federal government, but to supplant the federal government.  Neither does enjoining § 5 impair the federal government's ability to enforce immigration laws in any way, as absent § 5 the federal government has full discretion and authority, without meddling by the state, to make detention determinations regarding noncitizens.

Defendants' argument that a preliminary injunction would harm the public interest is also meritless.  The public interest is not served by allowing an unconstitutional law to take effect. *See Chamber of Commerce v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010); *GLAHR*, 793 F. Supp. at 1340; *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011).  Although Defendants assert that HB 497's verification scheme is constitutional, that does not provide support for the legality of § 5, which goes far beyond verification by authorizing detention and transfer of noncitizens without federal consent.

*//*

## CONCLUSION

For the foregoing reasons and the reasons discussed in Plaintiffs' opening brief, the court should preliminarily enjoin § 5 pending a full and complete constitutional review.

Dated:  October 5, 2012                                    Respectfully submitted,

Linton Joaquin*                                            /s/ Jennifer Chang Newell
Karen C. Tumlin*                                           Jennifer Chang Newell*
Shiu-Ming Cheer*                                           Cecillia D. Wang*
Melissa S. Keaney*                                         Katherine Desormeau*
NATIONAL IMMIGRATION LAW CENTER                            AMERICAN CIVIL LIBERTIES
3435 Wilshire Boulevard, Suite 2850                        UNION FOUNDATION IMMIGRANTS'
Los Angeles, California 90010                              RIGHTS PROJECT
Telephone: (213) 639-3900                                  39 Drumm Street
Facsimile: (213) 639-3911                                  San Francisco, California 94111
*joaquin@nilc.org*                                         Telephone: (415) 343-0775
*tumlin@nilc.org*                                          Facsimile: (415) 395-0950
*cheer@nilc.org*                                           *cwang@aclu.org*
*keaney@nilc.org*                                          *jnewell@aclu.org*
                                                           *kdesormeau@aclu.org*

Omar C. Jadwat*
Andre I. Segura*
Elora Mukherjee*                                           Esperanza Granados (USB No. 11894)
AMERICAN CIVIL LIBERTIES                                   AMERICAN CIVIL LIBERTIES
UNION FOUNDATION                                           UNION OF UTAH FOUNDATION, INC.
125 Broad Street, 18th Floor                               355 North 300 West
New York, New York 10004                                   Salt Lake City, Utah 84103
Telephone: (212) 549-2660                                  Telephone: (801) 521-9862
Facsimile: (212) 549-2654                                  Facsimile: (801) 532-2850
*ojadwat@aclu.org*                                         *egranados@acluutah.org*
*asegura@aclu.org*
*emukherjee@aclu.org*                                      Bradley S. Phillips*+
                                                           MUNGER, TOLLES & OLSON LLP
                                                           355 South Grand Avenue
                                                           Thirty-Fifth Floor
*    Admitted *Pro hac vice*                               Los Angeles, CA  90071-1560
+    Counsel for all plaintiffs except SEIU and            Telephone: (213) 683-9100
     Workers' United                                       Facsimile: (213) 687-3702
                                                           *brad.phillips@mto.com*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that copies of the foregoing **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AGAINST § 5 OF HB 497** and its supporting attachments were served by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

BARRY G. LAWRENCE
blawrence@utah.gov

PHILIP S. LOTT
phillott@utah.gov

TIMOTHY EVANS
tevans@utah.gov

OMAR C. JADWAT
ojadwat@aclu.org

ANDRE SEGURA
asegura@aclu.org

ELORA MUKHERJEE
emukherjee@aclu.org

CECILLIA D. WANG
cwang@aclu.org

KATHERINE DESORMEAU
kdesormeau@aclu.org

ESPERANZA GRANADOS
egranados@acluutah.org

LINTON JOAQUIN
joaquin@nilc.org

KAREN C. TUMLIN
tumlin@nilc.org

SHIU-MING CHEER
cheer@nilc.org

MELISSA S. KEANEY
keaney@nilc.org

BRADLEY S. PHILLIPS
brad.phillips@mto.com

STUART F. DELERY
DAVID B. BARLOW
DANIEL D. PRICE
ARTHUR R. GOLDBERG
W. SCOTT SIMPSON
scott.simpson@usdoj.gov


Dated:  October 5, 2012

/s/ Jennifer Chang Newell
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
IMMIGRANTS' RIGHTS PROJECT

18